UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------x
JOSEPH CALDRELLO, SANDRA V.    :
CALDRELLO, RICHARD T.          :
LATHROP, and BYRON PAUL YOST,  :
Chapter 7 Trustee for the      :
Bankrupt Estate of T.N.M.      :
Lathrop, Inc.                  :
                               :
            Plaintiffs,        : Civil No. 3:93CV00302(AWT)
                               :
v.                             :
                               :
MERCEDES BENZ OF NORTH         :
AMERICA, INC.,                 :
                               :
            Defendant.         :
-------------------------------x
```

**RULING ON MOTION FOR NEW TRIAL AND/OR TO ALTER OR AMEND JUDGMENT**

For the reasons set forth below, the plaintiff's motion for new trial and/or to alter or amend the judgment is being denied.

**I.  Factual and Procedural Background**

In 1989, T.N.M. Lathrop, Inc. owned and operated several automobile dealerships in Connecticut, including a Mercedes-Benz dealership located in New London.  On October 2, 1989, T.N.M. Lathrop, Inc. filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code.  T.N.M. Lathrop's bankruptcy case was subsequently converted into one under Chapter 7 of the United States Bankruptcy Code.  The identity of the trustee for the bankrupt estate has changed over the years (the trustee at the time in question being referred to as the "Trustee").

In accordance with the Passenger Car Dealer Agreement (the

"Dealer Agreement") between Mercedes-Benz of North America ("MBNA") and T.N.M. Lathrop, Inc., MBNA's consent was required to sell the dealership but MBNA could not unreasonably withhold its consent. While it was operating as debtor-in-possession under Chapter 11, T.N.M. Lathrop, Inc. entered into a written agreement (the "Buy/Sell Agreement") to sell its Mercedes-Benz dealership to a group of buyers referred to as the Lanza/Rakosky Group. Under the Dealer Agreement, the Buy/Sell Agreement was subject to MBNA's approval of the Lanza/Rakosky Group's application, which could not be unreasonably withheld. MBNA rejected the application of the Lanza/Rakosky Group. Then as contemplated by an order of the Bankruptcy Court, MBNA considered applications submitted after a solicitation by the debtor-in-possession for backup bids, including another application submitted by the Lanza/Rakosky Group under the name "Thames Motor Cars, Inc." MBNA eventually approved the application of Douglas Callahan, Sean Callahan and Jeff Aiosa, submitted under the name "Carriage House of New London, Inc." Carriage House of New London, Inc. offered approximately $1.34 million less for the dealership than was offered by the Lanza/Rakosky Group. In connection with the sale by T.N.M. Lathrop, Inc. to Carriage House of New London, Inc., the Trustee executed a release in favor of MBNA (the "Release").

The plaintiffs claim that MBNA unreasonably withheld its

approval of the application of the Lanza/Rakosky Group, and that the sale of the Mercedes-Benz dealership to the Lanza/Rakosky Group would have allowed T.N.M. Lathrop, Inc. to satisfy its debtors and continue to operate some of its other dealerships. At trial, the Trustee was the sole remaining plaintiff and the remaining claims were breach of contract, violation of Conn. Gen. Stat. § 42-133cc(10), (12), and (13), fraudulent and/or negligent misrepresentation, tortious interference with business expectancy, breach of the implied covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, et seq.

After the plaintiff rested, MBNA moved, pursuant to Fed. R. Civ. P. 50, for judgment as a matter of law as to each of the plaintiff's remaining claims. The court granted the motion, after a lengthy oral argument.

**II. Legal Standard**

As to the motion for a new trial, such a motion can be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." 11 C. Wright & A. Miller, Federal Practice & Procedure § 2803. "Any

3

error of law, if prejudicial, is a good ground for a new trial." Id. at § 2805. If the court "'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice,'" a new trial should be granted. U.S. v. Landau, 155 F.3d 93, 104 (2d Cir. 1998) (citation omitted). Error by a court in granting a defendant's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 at the conclusion of the plaintiff's case would satisfy the requirements for relief under Rule 59(a)(1).

As to the motion to alter or amend the judgment, "[a]lthough Rule 59(e) does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment, we agree with our sister circuits that district courts may alter or amend judgment 'to correct a clear error of law or prevent manifest injustice.'" Munafo v. Metropolitan Transp. Authority, 381 F.3d 99, 105 (2d Cir. 2004) (citation omitted); see also Graham v. U.S., Crim. No. 3:00cr58(AHN), Civ. No. 3:01cv177(AHN), 2006 WL 3361752, at *2 (D. Conn. Nov. 16, 2006) ("'Rule 59(e) recognizes only three possible grounds for any motion for reconsideration: (1) an intervening change in the law; (2) the availability of new evidence not previously available; and (3) the need to correct a clear error of law or prevent manifest injustice.'") (citation omitted). "The 'narrow aim' of Rule 59(e) is 'to mak[e] clear that the district court possesses the power' to rectify its own

4

mistakes in the period immediately following the entry of judgment.'" Green v. Town of Blooming Grove, 935 F.2d 507, 512 (2d Cir. 1991) (citation omitted). Error by a court in granting a defendant's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 at the conclusion of the plaintiff's case would satisfy the requirements for relief under Rule 59(e).

**III. Discussion**

The plaintiff argues that, based on the evidence at trial, a jury reasonably could have found that MBNA unreasonably withheld its consent to the sale by the plaintiff to the Lanza/Rakosky Group. In support of each of its claims, the plaintiff points to some or all of its contentions, which are reviewed below, as to what evidence could support that conclusion.

The plaintiff argues that the jury could have reasonably found, based on the evidence at trial, that (1) the Lanza/Rakosky Group's application was not incomplete despite Line 15 of the Statement of Finance and Ownership being left blank because it could not complete Line 15 by virtue of the fact it was not an existing dealer and did not have an existing wholesale financing line of credit; (2) the significance of having a commitment for wholesale financing was not made clear to the Lanza/Rakosky Group until the January 26, 1990 meeting with MBNA; (3) at the January 26, 1990 meeting, the Lanza/Rakosky Group said that it would make every effort to satisfy the request for a commitment for

5

wholesale financing; (4) Michael Smith submitted additional information to MBNA on January 29, 1990 and, at the conclusion of his letter, stated "if there is any further information you need, please do not hesitate to contact me"; (5) the Lanza/Rakosky Group had until February 27, 1990 to obtain approval of its application and MBNA knew that the Lanza/Rakosky Group was working on obtaining the commitment for wholesale financing; and (6) the Lanza/Rakosky Group obtained a commitment for wholesale financing on February 14, 1990.  However, the undisputed evidence at trial demonstrates that the Lanza/Rakosky Group never submitted a completed application to MBNA despite its representation that it was doing so after the importance of having a commitment for wholesale financing had been made clear, and that even after the Lanza/Rakosky Group obtained a commitment for wholesale financing, it never notified MBNA that it had obtained one.  "'Viewed in the light most favorable to the [plaintiff], the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence,'" the only conclusion that a reasonable juror could have reached is that MBNA did not unreasonably withhold its approval of the Lanza/Rakosky Group's application. <u>Leopold v. Baccarat, Inc.</u>, 174 F.3d 261, 267 (2d Cir. 1999).  Viewing the evidence under the applicable standard, the material facts, as to which there is no genuine issue, are as set forth below.

The Lanza/Rakosky Group entered into a Buy/Sell agreement with T.N.M. Lathrop, Inc. on October 27, 1989.  Pursuant to the Bankruptcy Court hearing on November 9, 1989, MBNA sent an application to the Lanza/Rakosky Group on November 10, 1989, enclosing a letter which stated, among other things, that the Statement of Finances and Ownership must be completed.  On November 21, 1989, the Lanza/Rakosky Group returned to MBNA what it represented was a completed application and a completed Statement of Finances and Ownership for "Oceancrest Mercedes Benz."  Line 15 of the Statement of Finances and Ownership read as follows:  "15. Name and address of finance company or bank we use for wholesale financing is: _____."  Line 15 was left blank, without any indication either that it was not applicable or that the Lanza/Rakosky Group was working on obtaining a commitment for wholesale financing.

On December 7, 1989, MBNA wrote to the Lanza/Rakosky Group, informing it of various deficiencies in its application.  MBNA pointed out, <u>inter</u> <u>alia</u>, that the "Mercedes-Benz" name could not be used in connection with the dealership name, and that it needed to know who would have decision-making authority at the dealership and who would be the full-time resident owner/operator.  MBNA communicated, with respect to the Statement of Finances and Ownership, that it was required to be competed in triplicate, so it was returning the original with two additional

7

forms; MBNA did not comment on the fact that Line 15 had been left blank.

In response, the Lanza/Rakosky Group sent MBNA a letter and revised documents dated December 12, 1989. The Lanza/Rakosky Group indicated that it would operate the dealership under the name "Trans-Oceanic Motors, Ltd.", or a d/b/a that would not include the "Mercedes-Benz" name, and that Stanley Cardinal would be the full-time resident owner/operator of the dealership. The documents sent included a statement of Finances and Ownership for Trans-Oceanic Motors, Ltd., completed in triplicate; Line 15 was left blank.

On January 3, 1990, Michael Smith, one of the members of the Lanza/Rakosky Group, called MBNA to inquire about the status of the application. Smith stated that he was "very concerned with damage to the franchise that might be caused by not expediting the package as quickly as possible." Plaintiff's Trial Exhibit 16. Smith was told that MBNA was also very concerned about the New London market and "would do everything in [its] power to approve the right dealer for [that] market as quickly as possible." Id.

On January 8, 1990, MBNA wrote to counsel for the Trustee and counsel for the Lanza/Rakosky Group informing them that MBNA was not in a position to consent to the proposed transfer because the information supplied with the application was incomplete; the

8

letter did not specify the way in which the application was incomplete. MBNA then proceeded to attempt to arrange a meeting with the Lanza/Rakosky Group for sometime during the week of January 22, 1990 for the purpose of discussing its application.

T.N.M. Lathrop, Inc. issued a notice dated January 18, 1990 stating that MBNA would make a decision on the Lanza/Rakosky Group's application on or before February 27, 1990 and soliciting backup bids to be considered in the event MBNA did not approve the Lanza/Rakosky Group. T.N.M. Lathrop, Inc.'s acceptance of backup bids was authorized by an order of the Bankruptcy Court.

On January 26, 1990, the Lanza/Rakosky Group met with MBNA to discuss its application. When asked if a commitment for wholesale financing had been obtained, the Lanza/Rakosky Group told MBNA that it was discussing the matter with several lending institutions. MBNA informed the Lanza/Rakosky Group that establishing credit was necessary in order for MBNA to process the application. The Lanza/Rakosky Group indicated that it understood and would make every effort to satisfy MBNA's request.

The Lanza/Rakosky Group submitted a new application to MBNA dated January 29, 1990, under the name "Thames Motor Cars, Inc." Al Luzietti had been added to the Lanza/Rakosky Group and attended the January 26, 1990 meeting, and MBNA was informed that Luzietti, who was the former sales manager at T.N.M. Lathrop, Inc., would be the full-time resident owner/operator for Thames

9

Motor Cars, Inc. Even though this application was submitted after the January 26, 1990 meeting at which the significance of having a commitment for wholesale financing was made clear, the Thames Motor Cars, Inc. application failed to provide any information about a commitment for wholesale financing; Line 15 of the Statement of Finances and Ownership was again simply left blank. Nor did the letter accompanying the application state that the Lanza/Rakosky Group was attempting to obtain a wholesale financing commitment. Rather, it stated that "a new 'Statement of Finances and Ownership' of Thames Motor Cars, Inc." was enclosed, and it ended with the statement by Smith that "I believe the letter and these enclosures constitute a complete application process; however if there is any further information you need, please do not hesitate to contact me." Plaintiff's Trial Exhibit 28. In its argument, the plaintiff points only to the latter portion of this statement.

MBNA did not contact the Lanza/Rakosky Group to request information concerning wholesale financing upon receipt of the January 29, 1990 letter and documents. However, MBNA had met with the Lanza/Rakosky Group and discussed the importance of a commitment for wholesale financing only three days before.

On February 8, 1990, MBNA sent the Lanza/Rakosky Group a letter rejecting the application it had submitted for Trans-Oceanic Motors, Ltd. MBNA cited a number of deficiencies in the

10

application, including that "the application also failed to contain a Wholesale Financing Commitment from a lending institution of which you were advised at our meeting." Plaintiff's Trial Exhibit 36. The Lanza/Rakosky Group understood that the application it submitted for Thames Motor Cars, Inc. would be considered with other applications that had been submitted in response to the solicitation for backup bids.

On February 14, 1990, the Lanza/Rakosky Group received a commitment for wholesale financing in connection with its application for a Honda dealership; the Lanza/Rakosky Group was not approved for a Honda dealership until after it obtained that commitment. Despite its belief that it had until February 27, 1990 to obtain MBNA's approval, the Lanza/Rakosky Group never informed MBNA that it had obtained a commitment for wholesale financing. Nor did the Lanza/Rakosky Group ever respond to MBNA's February 8, 1990 letter to point out any inaccuracy in that letter.

The plaintiff argues that the Lanza/Rakosky Group's application was not incomplete despite the failure to provide information concerning a commitment for wholesale financing because it was not an existing dealer. As early as December 12, 1989, the Lanza/Rakosky Group was discussing wholesale financing with American Honda Motor Company, Inc. in connection with its effort to acquire a Honda dealership, and in fact, Honda did not

11

approve the Lanza/Rakosky Group for a dealership until it had received a commitment for wholesale financing.  Thus, despite the fact that it was not an existing dealer, the Lanza/Rakosky Group obtained a commitment for wholesale financing, and, in addition, after the January 26, 1990 meeting, the Lanza/Rakosky Group understood that it had to obtain a commitment for wholesale financing in order for MBNA to process its application.  MBNA having informed the Lanza/Rakosky Group that the commitment for wholesale financing was required in order for an application to be complete, and having received from the Lanza/Rakosky Group an acknowledgment that it understood that requirement, MBNA's insistence on having that requirement satisfied could not be viewed as unreasonable.

The plaintiff contends that the significance of wholesale financing was not made clear to the Lanza/Rakosky Group until the January 26, 1990 meeting with MBNA.  However, assuming the jury reached that conclusion, that fact would not provide a basis for concluding that MBNA was unreasonable in expecting the Lanza/Rakosky Group to obtain a commitment for wholesale financing once the significance of such a commitment had been explained.

The plaintiff emphasizes that, at the January 26, 1990 meeting, the Lanza/Rakosky Group said it would make every effort to satisfy the request for a commitment for wholesale financing.

12

However, the actions of the Lanza/Rakosky Group subsequent to the meeting did not give any indication to MBNA that it should rely on the representation given at the meeting. The indications were, in fact, to the contrary. When the application for Thames Motor Cars, Inc. was submitted shortly after the meeting, Line 15 of the Statement of Finances and Ownership was again left blank, and Smith's cover letter stated that he believed his submission constituted "a complete application process." In addition, Smith and MBNA had discussed the need for moving quickly on processing the Lanza/Rakosky Group's application, and the only communication received by MBNA prior to its February 8, 1990 letter from the Lanza/Rakosky Group that touched on obtaining a commitment for wholesale financing was the package for the Thames Motor Cars, Inc. application.

The plaintiff emphasizes Smith's January 29, 1990 letter, but as discussed above, the plaintiff only cites to a portion of the pertinent statement.

The plaintiff argues that the Lanza/Rakosky Group had until February 27, 1990 to obtain approval of its application. However, the Bankruptcy Court's order stated that "a decision on the transfer of the franchise rights to the Buyers will be made by MBNA <u>on</u> <u>or</u> <u>before</u> February 27, 1990." Plaintiff's Trial Exhibit 26 (emphasis added). Thus, the timing of MBNA's rejection of the Lanza/Rakosky Group application for Trans-

13

Oceanic Motors, Ltd. was in compliance with the Bankruptcy Court's order. The application had been submitted on November 21, 1989, and MBNA did not send the rejection letter until February 8, 1990; it only did so after giving notice on January 8, 1990 that the application was incomplete and meeting with the Lanza/Rakosky Group on January 26, 1990. Moreover, Michael Smith had expressed concern, during his January 3, 1990 conversation with MBNA, that damage to the franchise might be caused by not processing the Lanza/Rakosky Group's application for Trans-Oceanic Motors, Ltd. as quickly as possible. Thus, one could not reasonably infer that MBNA acted unreasonably by making its decision when it did, and there is no issue as to whether MBNA acted unreasonably during the period between making its decision and February 27, 1990 because the Lanza/Rakosky Group never told MBNA that it had obtained a commitment for wholesale financing and never responded to MBNA's February 8, 1990 letter.

The plaintiff emphasizes the fact that the Lanza/Rakosky Group obtained a wholesale financing commitment on February 14, 1990. However, it is undisputed that the Lanza/Rakosky Group it never notified MBNA that it had obtained a wholesale financing commitment and, moreover, that it never responded to MBNA's February 8, 1990 letter.

In view of the foregoing, a reasonable jury could not conclude that MBNA unreasonably withheld its consent to the sale

by T.N.M. Lathrop, Inc. to the Lanza/Rakosky Group.  This fact is dispositive as to the plaintiff's breach of contract claim. Moreover, with the possible exception of his claim for fraudulent and/or negligent conduct, the plaintiff points to no basis for his other claims other than his contention that MBNA unreasonably withheld its approval of the application of the Lanza/Rakosky Group, so this fact is also dispositive as to those claims.  As to the claim for fraudulent and/or negligent conduct, the plaintiff also contends that MBNA acted fraudulently and/or was negligent by failing to provide information the Lanza/Rakosky Group was seeking and then claiming that the application of the Lanza/Rakosky Group did not contain sufficient information to be considered a complete application.  However, it is undisputed that MBNA met with the Lanza/Rakosky Group on January 26, 1990 and reviewed the deficiencies in the application and gave the Lanza/Rakosky Group a copy of the Mercedes-Benz Dealership Standard Accounting Manual to assist it in completing a revised application.  It is also undisputed that the Lanza/Rakosky Group nonetheless submitted a few days later an application for Thames Motor Cars, Inc. that failed to address the critical question of a commitment for wholesale financing, and undisputed that the Lanza/Rakosky Group never informed MBNA once it had obtained a commitment for wholesale financing.

MBNA was also entitled to judgment as a matter of law based

on its affirmative defense of waiver. Specifically, the undisputed evidence presented at trial was that the Asset Purchase Agreement between the plaintiff and Carriage House of New London, Inc. required, as a condition precedent to closing, that: "Seller shall have released all of its right, title and interest in any franchise or similar agreements with MBNA, and will further agree to execute all necessary papers to effectuate those releases and the transfers contemplated hereby." Defendant's Trial Exhibit 31, § 7.1f. On May 10, 1990, the Bankruptcy Court entered an order approving the sale of T.N.M. Lathrop, Inc.'s Mercedes-Benz dealership. That order incorporated by reference the Asset Purchase Agreement and the order stated that "[t]he sale of the Purchased Assets to the Buyer, upon the terms and conditions set forth in the Sale Agreement, is in the best interests of the estate and its creditors." Defendant's Trial Exhibit 44, at ¶ 10.

The Release reads as follows:

> You are hereby notified that, effective upon such sale, T.N.M. Lathrop, Incorporated is voluntarily terminating its Dealer Franchise Agreement with Mercedes Benz of North America and releases all claims and interest it may have in such franchise. In addition, T.N.M. Lathrop, Incorporated releases all claims in regard to customer claims and warranty service.

Attorney Anthony Novak, who was special counsel to the Trustee, conceded that the Release, including the word "franchise," was intended to be interpreted pursuant to

16

Connecticut law. "'Franchise' means a written agreement or contract between a manufacturer or distributor and a dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract, and pursuant to which the dealer purchases and resells the franchise product or leases or rents the dealership premises." Conn. Gen. Stat. § 42-133r(10).

All of the plaintiff's claims against MBNA arise out of one event, i.e. MBNA's rejection of the Lanza/Rakosky Group's application for a dealership. The plaintiff had the right under the Dealer Agreement to have MBNA not unreasonably withhold its consent to the sale of the dealership to any buyer proposed by the plaintiff, including the Lanza/Rakosky Group. As a condition of the sale to Carriage House of New London, Inc., the plaintiff waived all claims it had under the Dealer Agreement. Because all the plaintiff's claims against MBNA arise out of MBNA's rejection of a buyer proposed by the plaintiff pursuant to the Dealer Agreement and the plaintiff's rights in the event of such a rejection are covered by the Dealer Agreement, all the plaintiff's claims are within the scope of the waiver set forth in the Release.

Attorney Novak testified that he added the words "it may have in such franchise", substituting them for "against Mercedes-Benz." His objective was that the Release not be a general release. Thus, to the extent there is any ambiguity created by

17

the clause "it may have in such franchise", the ambiguity is to be construed against the plaintiff. See <u>Cantonbury Heights Condominium Ass'n, Inc. v. Local Land Development, LLC, et al.</u>, 273 Conn. 724, 735 (2005) ("Where the language [of a contract] is unambiguous, we must give the contract effect according to its terms. . . . Where the language is ambiguous, however, we must construe those ambiguities against the drafter.").

In connection with the Rule 50 motion, the plaintiff argued that the Release did not constitute a waiver of claims brought under Conn. Gen. Stat. §§ 42-133cc(10), (12), and (13) even where the only basis for the statutory claims was a basis for liability that was within the scope of the waiver with respect to the Dealer Agreement. Thus, the plaintiff would have the Release interpreted as if it read that it was a "release of all claims and interest it may have in such franchise to the extent such claim or interest is asserted based on the Dealer Franchise Agreement." An interpretation that is at least equally reasonable is that the Release is a release of all claims and interests the plaintiff has under the Dealer Agreement, whether or not the claim is asserted as a breach of the Dealer Agreement; under such an interpretation the Release is still not a general release. Because the language in this clause of the Release must be construed against the Trustee, the court adopts the latter interpretation. Consequently, because all the plaintiff's claims

18

have as their basis the contention that MBNA unreasonably withheld its approval of the Lanza/Rakosky Group's application, those claims are barred by the waiver contained in the Release.

**III. Conclusion**

For the reasons set forth above, the plaintiff's Motion for New Trial and/or in the Alternative Motion to Alter or Modify the Judgment (Doc. No. 201) is hereby DENIED.

It is so ordered.

Dated this 23rd day of March 2007 at Hartford, Connecticut.

                                              /s/AWT
                                    Alvin W. Thompson
                              United States District Judge